**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LONDON DIVISION**

IN RE:

RICHMOND JONES, JR.                                              CASE NO. 15-60138
RUTHIE A. JONES
DEBTORS


## MEMORANDUM OPINION AND ORDER


The Debtors Richmond and Ruthie Jones reside in a manufactured home purchased with

a loan from 21st Mortgage Corporation.  The Debtors' chapter 13 plan proposes to pay 21st

Mortgage the full value of the manufactured home with 5.25% interest.  The Debtors and the

Chapter 13 Trustee argue the interest rate complies with the method set forth in this District's

Local Form Plan and the plurality opinion in *Till v. SCS Credit Corporation*, 541 U.S. 465

(2004).  21st Mortgage objects, arguing the lack of a binding opinion in *Till* requires the Court to

apply the Sixth Circuit's pre-*Till* coerced-loan approach.

The Sixth Circuit has recognized the *Till* plurality opinion as the appropriate

methodology for calculating interest in a chapter 13 case, but 21st Mortgage argues that this

recognition is only dictum that does not change the pre-*Till* Sixth Circuit case law.  Further, it

argues that under the *Marks*[1] test for identifying the holding of a fragmented Supreme Court

opinion, *Till* lacks a binding holding.   The first argument is contrary to multiple holdings of

lower Sixth Circuit courts, that have followed the Sixth Circuit's direction to apply the *Till*

plurality opinion.  The second argument misapplies the *Marks* test.

---

[1] *Marks v. United States*, 430 U.S. 188 (1977).

I. **FACTS AND PROCEDURAL HISTORY**

The Debtors purchased a Kabco manufactured home in 2006, financing their purchase

with a $45,556.74 loan from 21st Mortgage at a 13.25% interest rate. [Claim 5-1.] The Debtors

first filed for Chapter 13 bankruptcy in 2013. [Case No. 13-61099.] 21st Mortgage objected to

Debtors' valuation of their manufactured home in the proposed plan in the prior case, but did not

object to the plan's 5.25% interest rate. [*See* Docs. 2 and 14 in Case No. 13-61099.]

21st Mortgage withdrew its objection after the Debtors amended the plan to value their

manufactured home at $28,000 and the plan was confirmed in March 2014. [*See* Docs. 59, 60

and 71 in Case No. 13-61099.] The Debtors then fell behind on their plan payments and the case

was dismissed in November 2014. [*See* Docs. 87 and 89 in Case No. 13-61099.]

The Debtors filed this case on February 6, 2015 [Doc. 1], and submitted a proposed plan

using this Court's Local Form Plan. *See* E.D. Ky. LBR 3015-1(a) ("A chapter 13 plan must

conform to Local Form No. 3015-1."). The proposed plan provides the same treatment for 21st

Mortgage as in the prior case: a $28,000 value at a 5.25% interest rate. [Doc. 2 at 2.] The

interest rate is 2% over the current Wall Street Journal prime rate (3.25%), consistent with

directions in the Local Form Plan that the rate in a plan that fails to state an interest rate for a

secured claim "shall be the WSJ Prime Rate on the date of confirmation plus 2 percentage

points." [*Id.*]

Despite accepting the same interest in the prior confirmed plan, 21st Mortgage objected

to the interest rate proposed in this case. [Doc. 25.] Its initial objection argued that the formula

approach set forth in the *Till* plurality opinion, which starts with the prime rate and adjusts

upward for an individual debtor's risk of nonpayment, is not binding on this Court. [*Id.*] The

initial objection argued that three methods of calculating interest are viable after *Till*: the

formula approach advocated by the plurality, the contract-rate approach endorsed by the dissent, and the coerced-loan approach, which none of the Justices embraced in *Till*. Further, 21st Mortgage argued that, under any of the methods the Court might adopt, the Debtors' proposed rate was too low.

The Chapter 13 Trustee responded to 21st Mortgage's objection, arguing the *Till* plurality's formula approach was binding precedent on this Court. [Doc. 34; Doc. 37.] The Trustee did not take a position on the correct formula rate in this case. *Id.* The supplemental brief of 21st Mortgage significantly alters its position. [Doc. 46.] 21st Mortgage now argues the Sixth Circuit's pre-*Till* coerced-loan approach continues to control because *Till* contains no binding precedent. [*Id.*] The Court heard oral argument on July 15, 2015, and makes the following ruling.

**II.  ANALYSIS**

**A.  *Till* and pre-*Till* Sixth Circuit Precedent.**

The requirement that chapter 13 debtors pay interest on secured claims is codified in § 1325. 11 U.S.C. § 1325(a). Section 1325(a) provides, in relevant part, that "the court shall confirm a plan if ... (5) with respect to each allowed secured claim provided for by the plan … (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim." *Id.*

All interpreters of this language have agreed that it requires courts "to 'discount ... a stream of deferred payments back to their present dollar value.'" *Till*, 541 U.S. at 474 (Stevens, J., plurality opinion) (alterations omitted); *see also id.* at 485 (Thomas, J., concurring) ("This case presents the issue of what the proper method is for discounting deferred payments to present value."); *id.* at 505 (Scalia, J., dissenting) (agreeing on this point). But both before *Till* and in

*Till* itself, judges disagreed on how to discount deferred payments to present value in two ways: (i) whether § 1325 required discounting only for the time value of money, or also for the risk of nonpayment; and (ii) if risk is accounted for, what is the best way to value risk.

Prior to *Till*, the Sixth Circuit addressed these issues in two published opinions. The Sixth Circuit held that § 1325 required consideration of risk using the "coerced loan" approach, which looked to "the current conventional market rate used for similar loans in the region." *Household Auto. Fin. Corp. v. Burden (In re Kidd)*, 315 F.3d 671, 678 (6th Cir. 2003); *see also Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427 (6th Cir. 1982). This approach did not consider a debtor's credit-worthiness. *Kidd*, 315 F.3d at 678. Other circuits, however, applied the contract-rate approach, the formula approach, or the cost of funds approach. *See Till*, 541 U.S. at 506 (collecting cases). The Supreme Court granted certiorari in *Till* to resolve this circuit split.

*Till* involved a plan that proposed a formula rate. *See Till*, 541 U.S. at 471 (explaining that the Tills calculated their proposed rate by adding a 1.5% risk adjustment to the prime rate). The bankruptcy court confirmed this plan, *id.* at 472, but the Seventh Circuit affirmed the District Court's reversal of the confirmation order. *Id.* at 472-73. The Seventh Circuit held that § 1325 required plans to conform to a variant of the coerced loan approach, under which the pre-bankruptcy contract rate was a presumptive starting-point. *Id.* The Tills' contract rate was substantially higher than the rate in the Tills' confirmed plan. *Id.* at 472.

The Supreme Court reversed the Seventh Circuit by a vote of five to four. Justice Stevens, writing for a plurality of four, provided that interest on secured claims should account for the risk of nonpayment using the formula approach. The plurality's "approach begins by looking to the national prime rate … [and] then requires a bankruptcy court to adjust the prime

4

rate" upward for an individual debtor's risk of nonpayment.[2]  *Id.* at 478-79 (Stevens, J., plurality

opinion).  The plurality therefore voted to reverse the Seventh Circuit.  *Id.* at 485.

Justice Thomas, concurring in the Court's judgment, interpreted § 1325 to only require a

"risk-free rate."  *Id.* at 487 (Thomas, J., concurring).  Justice Thomas would require that the

value of the property that a debtor promises to pay a secured creditor equal the amount of its

secured claim, not that the expected value of the debtor's *promise* to pay a secured creditor equal

the amount of its claim.[3]  *Id.*  Justice Thomas recognized the risk-free rate, though not a market

lending rate, is most closely approximated by the prime rate.  *Id.* at 488 n.2.[4]  Justice Thomas

concluded that the Tills' plan satisfied § 1325 because its rate was "higher than the risk-free

rate," thus concurring in the judgment reversing the Seventh Circuit.  *Id.* at 491.

The four dissenters agreed with the plurality that interest on secured claims must

compensate for the risk of nonpayment.  *Id.* at 491 (Scalia, J., dissenting).  The dissenters would

have affirmed the Seventh Circuit, however, on the ground that its presumptive contract-rate

approach more accurately measured risk.  *Id.* at 492.

**B.  Post-*Till* in the Sixth Circuit.**

After *Till* was decided, courts almost universally treated *Till*'s plurality opinion as

binding.  This is especially true in the Sixth Circuit.  The Sixth Circuit addressed the impact of

*Till* in an appeal of the cramdown rate in a chapter 11 plan that did not follow the coerced-loan

---

[2] The plurality wrote that in the hypothetical instance a bankruptcy court was "somehow . . . certain a debtor would complete his plan," the prime rate would be the correct rate under § 1325.  *Id.* at 479 n.18 (Stevens, J., plurality opinion).

[3] Justice Thomas allowed that, in the exceedingly rare circumstance where a Chapter 13 plan promises a note, that is, another promise, instead of either the usual stream of cash payments, stock, personal or real property, discounting the value of that note to present value should account for the risk of nonpayment.  *See id.* at 488-89.

[4] The risk-free rate is slightly lower than the prime rate because, as the plurality noted, the prime rate itself "reflects . . . [a] relatively slight risk of default."  *Id.* at 479.  So, the prime rate would satisfy Justice Thomas's interpretation of § 1325.

approach. *Bank of Montreal v. Official Comm. of Unsecured Creditors (In re Am. HomePatient, Inc.)*, 420 F.3d 559, 565 (6th Cir. 2005). The Sixth Circuit reviewed *Till* and the plurality's discussion favoring the formula rate over the coerced-loan, presumptive contract-rate and cost of funds approaches. *Id.* at 566.

The Sixth Circuit wrote that the Supreme Court "endorsed the use of the formula approach" and that "the plurality is clear that the formula approach is the preferable method for Chapter 13 cases." *Id.* The court acknowledged that the formula approach might not work as well in chapter 11, however, because there is sometimes a market for debtor-in-possession financing in commercial reorganization cases. *Id.* at 567 (*citing Till*, 541 U.S. at 476 n. 14.) The Sixth Circuit settled on a rule for chapter 11 cramdown cases that would first look to an established market for an interest rate, and then to the formula rate if a market did not exist.

*American HomePatient*'s  comments regarding the use of the formula rate in chapter 13 cases, and its acceptance of the formula rate if no financing market exists in a chapter 11 case, indicates the Sixth Circuit accepts the *Till* plurality opinion as binding. Other courts in the Sixth Circuit have followed this signal when reviewing rates in chapter 13 cases.

The Bankruptcy Appellate Panel of the Sixth Circuit held after *HomePatient* that, even when the formula rate exceeds the contract rate, *Till* required courts to apply the formula approach. *DaimlerChrysler Servs. North Am. LLC v. Taranto (In re Taranto)*, 365 B.R. 85, 90 (B.A.P. 6th Cir. 2007). A Michigan district court treated *Till*'s plurality opinion as binding because "the Sixth Circuit has concluded that Justice Stevens's plurality carries precedential force." *McDonald v. Credit Acceptance Co. (In re Horny)*, No. 11-12508, 2011 WL 6643074, at *6 n.4 and accompanying text (E.D. Mich. Dec. 21, 2011). Perhaps most compelling, the only bankruptcy judge to ever hold that the *Till* plurality opinion was not binding, *see In re Cook*, 322

6

B.R. 336, 341-44 (Bankr. N.D. Ohio 2005) (Kendig, J.), subsequently reversed his decision on

the basis of *American HomePatient*.  *See In re Blanton*, No. 10-60160, 2010 WL 4503188, at *2

(Bankr. N.D. Ohio Oct. 29, 2010) (Kendig, J.) ("In light of [*American HomePatient*], the Court

believes that the Sixth Circuit would adopt *Till* in the chapter 13 context if presented directly

with the question.").

Further, this Court has followed the *Till* plurality opinion for the past eleven years,

whether in its Local Form Plan, *see* Part I *supra*, in its daily Chapter 13 practice, or in its written

opinions.  *See*, *e.g.*, *In re Kelley*, No. 11-51197, 2012 WL 5457331, at *3 (Bankr. E.D. Ky. Nov.

8, 2012) (stating that a formula rate sixteen points lower than the contract rate was "permissible"

under *Till*, citing *Taranto*).  The formula rate is the appropriate method to determine the

cramdown rate in a chapter 13 proceeding.  The Court joins those courts that have followed

*American HomePatient* in concluding that the *Till* plurality opinion is binding.

### C.  **The *Marks* Rule.**

21st Mortgage's arguments do nothing to address the *Till* plurality's criticisms of the

non-formula methods of calculating cramdown interest rates (the coerced-loan, presumptive

contract-rate and cost of funds approaches).  21st Mortgage solely argues for a return to the Sixth

Circuit's pre-*Till* coerced-loan approach because, in its view, the *Till* plurality opinion is not

binding under the *Marks* test for identifying the holding of a fragmented Supreme Court

opinion.[5]  *Marks v. United States*, 430 U.S. 188, 191 (1977).  The prior discussion shows the

---

[5] The few courts that have addressed that issue have reached divergent results.  *Compare In re Flores*, No. 05-38630, 2006 WL 4452973, at *6-7 (Bankr. D.N.J. Mar. 29, 2006) (holding that the *Till* plurality opinion is binding under *Marks*) *with In re Cook*, 322 B.R. 336, 341-44 (Bankr. N.D. Ohio 2005) (holding that *Till* contains no binding holding under *Marks*); *cf. McDonald v. Credit Acceptance Co. (In re Horny)*, No. 11-12508, 2011 WL 6643074, at *6 n.4 and accompanying text (E.D. Mich. Dec. 21, 2011) (doubting that *Till* contains a binding holding under *Marks*, but treating the plurality opinion as binding under the Sixth Circuit's dictum in *American HomePatient*); *Drive Fin. Servs. v. Jordan*, 521 F.3d 343, 349-50 (5th Cir. 2008) (avoiding deciding whether *Till* contains a binding holding under *Marks* and treating *Till* as binding on its facts).

Sixth Circuit endorsed the use of the formula rate in a chapter 13 case, so it is not clear a *Marks*

analysis by a lower court is necessary.  Regardless, application of *Marks* results in a conclusion

that the plurality opinion in *Till* is binding.

In *Marks*, the Supreme Court held that fragmented opinions could contain binding

holdings, and announced the following test to identify those holdings:  "When a fragmented

Court decides a case and no single rationale explaining the result enjoys the assent of five

Justices, the holding of the Court may be viewed as that position taken by those Members who

concurred in the judgments on the narrowest grounds."  *Id.* at 193 (internal quotation

marks omitted).[6]

Over the years, *Marks* has produced a great deal of confusion among lower courts, which

have often struggled to understand and apply its rule.  *See, e.g.*, *Lisk v. Lumber One Wood*

*Preserving, LLC*, --- F.3d ----, 2015 WL 4139740, at *5 (11th Cir. 2015) ("For some issues,

asking which of two opinions is narrower is akin to asking, 'Which is taller, left or right?'");

*Grutter v. Bollinger*, 539 U.S. 306, 325 (2003) (declining to "pursue the *Marks* inquiry to the

utmost logical possibility when it has so obviously baffled and divided the lower courts that have

considered it." (internal quotation marks omitted)).

The Sixth Circuit, however, has established a simple and precise test for determining

whether a case contains a *Marks* holding, and if so, what that holding is.  The Sixth Circuit's test

originated in an en banc opinion of the D.C. Circuit, *King v. Palmer*, 950 F.2d 771 (D.C. Cir.

1991).  In an effort to bring clarity to *Marks*'s use of "narrowness," the court "gave that

---

[6] *Marks*'s specific holding concerned the precedential effect of *Memoirs v. Massachusetts*, 383 U.S. 413 (1966). A three-Justice plurality in *Memoirs* voted to reverse the suppression of a book (the eponymous *Memoirs*) on the ground that only obscene materials utterly without redeeming social value were unprotected.  Two concurring Justices combined with the plurality to form a majority for reversal on the ground that, in their view, there was no obscenity exception to the First Amendment.  *Marks* held that the plurality opinion concurred in the judgment on the narrowest grounds and stated the binding holding of *Memoirs*.

metaphor an analytical interpretation." *United States v. Duvall*, 740 F.3d 604, 618 (D.C. Cir.

2013) (Williams, J., concurring in the denial of rehearing en banc).  The D.C. Circuit explained:

> *Marks* is workable–one opinion can be meaningfully regarded as "narrower" than
> another–only when one opinion is a logical subset of other, broader opinions.  In
> essence, the narrowest opinion must represent a common denominator of the
> Court's reasoning; it must embody a position implicitly approved by at least five
> Justices who support the judgment.

*King*, 950 F.2d at 781.

The Sixth Circuit has relied on this test when it undertakes a *Marks* analysis.  *See United*

*States v. Kratt*, 579 F.3d 558, 562 (6th Cir. 2009) (explaining that a *Marks* holding exists only

where it is "possible to identify the concurring opinion that 'is a logical subset' of the other

opinion (or opinions).") (citations omitted); *see also United States v. Cundiff*, 555 F.3d 200, 209

(6th Cir. 2009) (defining a *Marks* holding as "a standard put forth in a concurring opinion [that]

is a logical subset of another concurring opinion (or opinions) that, together, would equal five

votes"); *Grutter v. Bollinger*, 288 F.3d 732, 741 n.6 (6th Cir. 2002) (en banc) (stating that a

*Marks* holding "must necessarily produce results with which a majority of the Court from that

case would agree." (internal quotation marks omitted)); *Triplett Grille, Inc. v. City of Akron*, 40

F3d. 129, 134 (6th Cir. 1994) (identifying a *Marks* holding in a concurring opinion that "set forth

as its standard a coherent subset of the principles articulated in the plurality opinion.").

This "logical subset" interpretation of *Marks* is often misunderstood.  The point is not to

find an opinion that five Justices in the majority agree with in full.  If there were such an opinion,

there would be a majority opinion.  *See Kratt*, 579 F.3d at 562 ("[I]t generally will be the case

that the legal reasoning of the plurality opinion and the legal reasoning of the concurring

opinion(s) will differ.")  Nor is the point to find components of concurring Justices' tests that

five Justices share.  *Cf.* April E. Kight, *Balancing the Till: Finding the Appropriate Cram Down*

*Rate in Bankruptcy Reorganizations After Till v. SCS Credit Corporation,* 83 N.C. L. REV. 1015, 1025-26 (2005) (arguing that *Till* may require cramdown to the prime rate because five Justices saw the prime rate as a "common denominator").

The logical subset, rather, is a rule that produces a subset of *results* on which five Justices in the majority agree.  Consider a case where five Justices reach the same result in two opinions.  If the first opinion will only produce that result in a subset of the cases in which the second opinion produces that result, then the majority necessarily agrees that courts should reach the same result in those cases where the first opinion produces it.  The logical subset rule identifies grounds for the Supreme Court's judgments to which five Justices who concur in the judgment necessarily subscribe.[7]

### D. *Marks* Applied to *Till*.

Applying the logical subset approach in *Marks* to *Till* reveals that the plurality opinion is binding.  In *Till*, a plurality of four Justices concurring in the judgment wrote that an interest rate satisfies § 1325(a)(5)(B)(ii) if a debtor pays the prime rate plus an adjustment for the debtor's risk of nonpayment.  The concurring opinion would use the risk-free rate (*i.e.*, the prime rate; *see* n.4 supra) for purposes of compensating the creditor under § 1325(a)(5)(B)(ii), and confirm any plan that proposed a rate greater or equal to the risk-free rate.  *Till*, 541 U.S. at 491 (Thomas, J., concurring).  Therefore, the majority agreed that any rate adjusted upwards from the prime rate for risk satisfies § 1325.  The plurality rule is a logical subset of the concurring opinion's broader position and represents the *Marks* holding of *Till*.

---

[7] For example, in *Memoirs*, see n.6, *supra*, the view of the three-Justice plurality that voted to protect all obscene materials with any redeeming social value was a logical subset of the view of two Justices in concurrence who would have protected all obscene materials.  Therefore, five Justices in the majority agreed that obscene materials with any redeeming social value were protected.

There is no scenario that would satisfy the plurality's test without also satisfying the concurrence's test. If the plurality's test requires a risk adjustment, it will always satisfy the concurrence, as occurred in *Till*. If a case presents no risk, then the majority would agree on the risk-free/prime rate. In the few cases where the concurrence would require a risk adjustment, *see* n.3 *supra*, the plurality would likewise impose a risk adjustment.

21st Mortgage offers only one point to resist this conclusion. It argues that Justice Thomas and the plurality failed to reach "consensus on a legal rationale." [Doc. 46 at 6.] In one sense, this is incorrect. The plurality and Justice Thomas did agree that the prime rate adjusted upwards for risk satisfied § 1325. But 21st Mortgage is correct in asserting that Justice Thomas and the plurality had different legal rationales for reaching that conclusion.

As explained above, however, a difference in rationale between a plurality opinion and concurring opinions does not prevent a case from containing a *Marks* holding. If five Justices agreed on a rationale, there would be a majority opinion, and no need to apply *Marks*. The Supreme Court in *Marks* said that its rule only applied when "no single rationale explaining the result enjoys the assent of five Justices." *Marks*, 430 U.S. at 193 (emphasis supplied). As the Sixth Circuit observed of another fractured decision in which Justice Stevens supplied the *Marks* holding:

> [F]undamental disagreements about how to interpret a statute do not necessarily destroy a subset-superset relationship between . . . two opinions. Otherwise, *Marks* would stand for little. … No matter how strongly the plurality may disagree with Justice Stevens' interpretive approach, his holding ... "will necessarily produce results" they agree with.

*Kratt*, 579 F.3d at 562-63 (*quoting Triplett Grille*, 40 F.3d at 134 (6th Cir. 1994)). Likewise, even though Justice Thomas might disagree with the plurality's approach, it will necessarily produce *results* he will agree with.

21st Mortgage also generally relies on *In re Cook*, 322 B.R. 336 (Bankr. N.D. Ohio 2005), which held that *Till* did not contain a *Marks* holding.  21st Mortgage takes this position even though the Judge issuing that opinion later reverted to the formula rate based on *American HomePatient.  See supra* at Section II.B.

The bankruptcy court in *Cook* concluded there was no *Marks* holding by positing hypothetical fact patterns in which the same nine Justices on the Court in *Till* would generate a different (or no) *Marks* holding.[8]  The reason it is possible to imagine scenarios where the plurality would be in dissent, or otherwise fail to control under *Marks*, is that the dissent would require a lower rate than the plurality in cases where the formula rate exceeds the contract rate. So although the plurality is a logical subset of the broader concurrence, it is not a logical middle ground between the concurrence and the dissent.

*Marks*, however, does not require any logical relationship between a *Marks* holding and the views of dissenters.[9]  The Sixth Circuit has never held that *Marks* contains such a requirement, and instead has consistently defined a *Marks* holding as "a standard put forth in a concurring opinion [that] is a logical subset of another *concurring* opinion (or opinions) that, together, would equal five votes."  *Cundiff*, 555 F.3d at 209 (emphasis supplied).

---

[8] *See id.* at 344 (observing that Justice Thomas and the dissenters would uphold a riskless rate in excess of the contract rate over the plurality's dissents); *id.* at 344 n.9 (noting that a risk-free rate below the contract rate would be rejected 8-1 over Justice Thomas's dissent, in a 4-4-1 decision that would produce no *Marks* holding because the formula rate is not a logical subset of the contract rate).

[9] Only one decision of which this Court is aware has held that a Supreme Court decision lacked a *Marks* holding because an opinion was not a middle ground between broader concurring views and the views of dissenters.  *See Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1337 (D.C. Cir. 2015) (Kavanaugh, J.) (faulting a decision for lacking a "*Marks* middle ground").  This "middle ground" approach was previously criticized in two separate concurrences in *Duvall*, an opinion of the same circuit that decided *Abbas*.  *Compare Duvall*, 740 F.3d at 610 (Kavanaugh, J., concurring in the denial of rehearing en banc) (arguing that Marks holdings must be "middle-ground opinion[s]"), *with id.* at 604-07 (Rogers, J., concurring in the denial of rehearing en banc) (taking issue with that approach because its reliance on dissents was a deviation from the D.C. Circuit's decision in *King v. Palmer*); *id.* at 623 (Williams, J., concurring in the denial of rehearing en banc) (same).  As previously noted, *King* is the basis for the Sixth Circuit's interpretation of *Marks*.

The Sixth Circuit's focus on concurring opinions in applying the *Marks* test is well-founded. The Supreme Court, like all appellate courts, makes binding precedent solely by giving reasons for its judgments. Dissents do not contain reasons for the Court's judgments; they provide reasons their authors oppose the Court's judgment. Dissents might help predict future rulings in the absence of binding precedent, but predictions are unnecessary when a majority of the Court agrees on legal reasons for its judgment. Therefore, the lack of a logical relationship between the *Till* plurality and the *Till* dissent does not prevent the *Till* plurality opinion from controlling lower courts under *Marks*.

## III. <u>CONCLUSION.</u>

The formula approach from *Till* is the appropriate method to establish a cramdown rate under § 1325(a)(5)(B)(ii). This result is based on a solid body of case law at and within the Sixth Circuit. Further, if a *Marks* analysis were performed, it would show the Sixth Circuit and lower courts therein correctly recognized the plurality's formula approach as binding precedent. 21st Mortgage's Objection to Confirmation [Doc. 25] is overruled in part; 21st Mortgage is free to pursue the alternative argument in its Objection that the Debtors' plan does not satisfy the formula approach.

13

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Monday, August 03, 2015**
(grs)